UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KIMBERLY A. REILLY
120 Shadow Pond Road
St. George, SC 29477

Case No. 22-CV

        Plaintiff,

v.

ASCENSION ALL SAINTS HOSPITAL
3801 Spring Street
Racine, WI 53405,

    and

ASCENSION WISCONSIN
400 West Riverwoods Pkwy
Glendale, WI 53212,

    and

ASCENSION
4600 Edmundson Rd
St. Louis, MO 63134

        Defendants.

## COMPLAINT

Plaintiff, Kimberly A. Reilly, by and through her undersigned counsel, brings this Complaint against the Defendants, Ascension, Ascension Wisconsin, and Ascension All Saints Hospital. In support of this Complaint, Mrs. Reilly alleges as follows:

1

## INTRODUCTION

1. This action is based on violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Wisconsin Fair Employment Act (Wis. Stat. §§ 111.31 to 111.395), and the common law tort of Wrongful Termination in Violation of Public Policy. The gravamen of this Compliant is that Defendants refused to accommodate, otherwise discriminated against, and subsequently suspended Mrs. Reilly without pay while threating termination because she requested religious accommodation from Defendants' policy of mandatory COVID-19 vaccination. Defendants knew or should have reasonably known that Mrs. Reilly held religious beliefs because she asserted them. Defendants nevertheless failed to provide an interactive process to ascertain her beliefs and entertain possible accommodations. Instead, Defendants suspended Mrs. Reilly without pay and threatened her with termination. Approximately six weeks into the unpaid suspension, Defendants requested Mrs. Reilly return to work without requiring any unique protocol to accommodate her religious beliefs, demonstrating her religious exemption did not pose an undue hardship and the unpaid suspension was unwarranted.

## JURISDICTION AND VENUE

2. This Court has authority over this action pursuant to 28 U.S.C. § 1331, in federal questions raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This Court has supplemental authority over Plaintiff's related claims arising from corollary state anti-discrimination law pursuant to 28 U.S.C. § 1367(a), and the common law tort of Wrongful Termination in Violation of Public Policy. Venue is proper in the Eastern District of Wisconsin under 42 U.S.C. § 2000e-5(f)(3), in that the Defendants maintain significant operations within the Eastern District. This case is appropriate for the assignment in the Milwaukee Division as the principal office of the Defendant Ascension Wisconsin is 400 West Riverwoods Pkwy, Glendale,

Wisconsin 53212, and Defendant Ascension All Saints Hospital ("Ascension All Saints") is located at 3801 Spring Street, Racine, Wisconsin 53405. This case is further appropriate for assignment to the Milwaukee Division in that the Plaintiff resided in Kenosha County at all times relevant herein. Furthermore, a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in Racine County and in this district.

**PARTIES**

3. At all times relevant herein, Mrs. Reilly resided in Kenosha County at 9263 62nd Street, Pleasant Prairie, Wisconsin, and was an employee of Defendants in Racine County.

4. Upon information and belief Defendant Ascension All Saints is a 356-bed community hospital located in Racine, Wisconsin. Ascension All Saints is an "employer" within the meaning of 42 U.S.C. § 2000e. Ascension All Saints operates with Defendants Ascension Wisconsin and Ascension.

5. Upon information and belief, Defendant Ascension Wisconsin is a healthcare organization operating 24 hospital campuses, more than 100 related healthcare facilities and employs more than 1,300 primary and specialty care clinicians from Racine, Wisconsin to Eagle River, Wisconsin. Ascension Wisconsin is an "employer" within the meaning of 42 U.S.C. § 2000e. Defendant Ascension is the state headquarters for Defendants Ascension and Ascension All Saints.

6. Upon Information and belief, Defendant Ascension is a national health system that operates more than 2,600 sites of care – including 143 hospitals and more than 40 senior living facilities – in 19 states and the District of Columbia, while providing a variety of services including clinical and network services, venture capital investing, investment management, biomedical engineering, facilities management, risk management, and contracting through

Ascension's own group purchasing organization. Ascension serves as the national headquarters for Defendants Ascension Wisconsin and Ascension All Saints.

## FACTUAL BACKGROUND

7. Mrs. Reilly is a Registered Nurse licensed to practice in Wisconsin.

8. Mrs. Reilly had been employed by Ascension All Saints Hospital from September 1999 until February 2022. She performed in an exemplary manner during her tenure.

9. Mrs. Reilly is baptized Catholic and practices her faith as a Nondenominational Christian.

10. As a Christian, Mrs. Reilly holds strong religious beliefs on sanctity of conscience, seeking guidance and discernment through prayer and meditation.

11. As a Christian, Mrs. Reilly holds strong religious beliefs on bodily integrity, believing her body is divinely given and must be safeguarded. She abstains from alcohol and uses holistic house cleaners, natural cosmetics, and body products.

12. Mrs. Reilly takes health maintenance seriously. She is seldom sick and has never been hospitalized for illness. Mrs. Reilly has required the assistance of a physician only twice in the past 20 years.

13. Mrs. Reilly contracted COVID-19 early in the pandemic, recovering without medical intervention.

14. Mrs. Reilly has suffered adverse reactions to vaccinations in the past and received permanent exemptions from Defendants' mandatory flu vaccination policy since at least 2017.

15. Mrs. Reilly's sincerely held religious beliefs of sanctity of conscience and bodily integrity prohibit her from receiving COVID-19 vaccination.

16. On or about August 4, 2021, Ascension announced a mandatory COVID-19 vaccination policy. As part of its policy, Ascension purported to provide employees with the opportunity to seek religious or medical exemptions, with the compliance deadline of November 12, 2021.

17. On August 19, 2021, Joseph R. Impecche, President and Chief Executive Officer of Ascension, sent an email to all Ascension employees, Catholic or not, entitled "Pope Francis: COVID-19 vaccination an 'act of love' and 'moral obligation'. Mr. Impicciche's email asserted there is a moral obligation to be injected with COVID-19 vaccines.

18. In order to submit a request for a religious exemption for the mandatory COVID-19 vaccination policy, Defendants required employees to use an online request form, with drop down answers. The deadline for submitting an online religious exemption form was October 1, 2021.

19. Before completing the form, employees were required to watch a video entitled "COVID-19 Myths and Facts".

20. In order to submit the online form, employees were required to answer about their religious affiliation, their religious beliefs contrary to vaccination, and how the vaccine violated their moral conscience. Employees were also required to check "I agree" to a statement which claimed assent to "voluntary resignation" for noncompliance of becoming "fully vaccinated" by November 12, 2021, in accordance with the COVID-19 mandatory vaccination policy.

21. On September 6, 2021, Mrs. Reilly timely filed a completed online form for a religious accommodation for the COVID-19 vaccination, detailing her sincerely held religious beliefs of bodily integrity and sanctity of conscience grounded in her Christian faith.

22. The same day, an automated email reply by Ascension's Service Desk ("Service Desk") acknowledged the submission of Mrs. Reilly's request for religious accommodation. It is uncertain where the Service Desk is located in the national Ascension network and who serves on the Exemption Review Committee.

23. On October 10, 2021, automated emails by the Service Desk denied Mrs. Reilly's request for religious accommodation.

24. Mrs. Reilly appealed the denial of her religious accommodation to the Service Desk, providing additional information on her religious beliefs and practices. She was not provided a contact person to interact with regarding her sincerely held religious beliefs and possible accommodations.

25. Mrs. Reilly's appeal was summarily denied on November 8, 2021, by another automated reply from the Service Desk.

26. On November 12, 2021, Defendants placed Mrs. Reilly on unpaid suspension for failing to comply with the mandatory COVID-19 vaccination policy.

27. As a result of the unpaid suspension, Mrs. Reilly lost pay, a large bonus, and contributions to her pension.

28. Mrs. Reilly filed discrimination claims against Ascension with the Equal Rights Division (ERD) of the Wisconsin Department of Workforce Development (DWD) on December 1, 2021.

29. Approximately six weeks after the unpaid suspension was enforced on November 12, 2021, Defendants requested Mrs. Reilly return to work without requiring any protocol to accommodate her religious beliefs and practices regarding COVID-19 vaccination, demonstrating the unpaid suspension was unwarranted.

30. Mrs. Reilly returned to work at Ascension All Saints on or about December 24, 2021.

31. When her employment was suspended without pay with the threat of termination, Mrs. Reilly reevaluated her relationship with her employer and made the life altering decision to leave her 23-year position with All Saints and move to South Carolina in February 2022.

32. By her counsel, Mrs. Reilly received a "Right to Sue" letter from the U.S. Equal Employment Opportunity Commission (EEOC) for her claim on July 11, 2022. The letter serves as Exhibit One of this complaint.

## FIRST CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.] Adverse Employment Action based on Religion Against Defendant**

1. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

2. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

3. Mrs. Reilly was always relevant herein an employee and applicant covered by 42 U.S.C. §2000e, et seq., prohibiting discrimination in employment based on religion. Defendants were always herein employers for purposes of 42 U.S.C. § 200e, et seq.

4. Mrs. Reilly holds deep sincere religious objections to receiving the COVID-19 vaccine.

5. Although Mrs. Reilly informed Defendants of her faith and practices, Defendants disregarded Mrs. Reilly's sincere religious beliefs which conflicted with receiving the COVID-19 vaccine.

6. Defendants refused to converse or interact with Mrs. Reilly regarding her faith to further understand her beliefs and religious practices.

7. Mrs. Reilly's religious accommodation request was denied without Defendants exploring any alternatives that might have been available to accommodate her religious beliefs.

8. Mrs. Reilly's religious beliefs and practices were therefore a motivating factor in placing her unpaid suspension

9. Mrs. Reilly suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

10. Defendants intentionally violated Mrs. Reilly's rights under Title VII with malice and reckless indifference.

11. Mrs. Reilly is entitled to lost wages, compensatory damages, punitive damages, attorney fees, costs of suit, a declaration that Defendants violated her rights under Title VII, and an injunction preventing Defendants from enforcing their discriminatory policies.

12. Mrs. Reilly is entitled to further relief as set forth below in her Prayer for Relief.

## SECOND CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]**
**Failure to Provide Religious Accommodation Against Defendant**

13. Mrs. Reilly hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

14. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it unlawful employment practice to fail or refuse to accommodate the religious beliefs and practices of an employee or prospective employee.

15. Mrs. Reilly suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

16. Mrs. Reilly is entitled to lost wages, compensatory damages, punitive damages, attorneys' fees, costs of suit, a declaration that Defendants violated her rights under Title VII, and an injunction preventing Defendants from further enforcing their discriminatory practices.

17. Mrs. Reilly is entitled to further relief as set forth in her Prayer for Relief.

## THIRD CAUSE OF ACTION

**Violation of the Wisconsin Fair Employment Act (Wis. Stat. §§ 111.31 – 111.395)**
**Discrimination based on Religious Creed Against Defendant**

18. Mrs. Reilly hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

19. Under the WFEA, it is further unlawful employment practice for an employer to discriminate against an employee in compensation, terms, conditions, or privileges of employment, because of the employee's religious creed.

20. Mrs. Reilly was always relevant herein an employee for purposes of the WFEA.

21. Defendants were always relevant herein employers for purposes of the WFEA.

22. Mrs. Reilly was always relevant herein a member of a protected class.

23. The WFEA broadly defines creed to include all aspects of observance and practice.

24. Defendants intentionally discriminated against Mrs. Reilly by making adverse employment decisions against her – by multiple threats of forced resignation and placing Mrs. Reilly on unpaid suspension, permanently marring her exemplary service throughout the COVID-19 pandemic and her tenure with Defendants.

25. Defendants demonstrated discriminatory animus toward Mrs. Reilly by showing callous indifference toward her sincerely held religious beliefs and inflicting an adverse employment action of unpaid suspension without considering or providing any alternative after Mrs. Reilly's requests for religious accommodation, denying an interactive process. Defendants discriminated against Plaintiffs based on their religious creed.

26. Defendants intentionally violated Mrs. Reilly's rights under the WFEA with malice and reckless indifference.

27. Mrs. Reilly suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

28. Mrs. Reilly is entitled to lost wages, compensatory damages, punitive damages, attorney fees, costs of suit, a declaration that Defendant violated her rights under the WFEA, and an injunction preventing Defendant from enforcing their discriminatory practices.

29. Mrs. Reilly is entitled to further relief as set forth in her Prayer for Relief.

## FOURTH CAUSE OF ACTION

**Wrongful Suspension in Violation of Public Policy**
**Common Law Tort Against Defendant**

30. Mrs. Reilly hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

31. Mrs. Reilly was always relevant herein an individual and employee for purposes of 42 U.S.C. § 2000e, et seq., prohibiting discrimination in employment.

32. Defendants were always relevant herein employers for purposes of 42 U.S.C. § 2000e, et seq.

33. As a Christian, Mrs. Reilly was always relevant herein a member of a protected class for purposes of 42 U.S.C. § 2000e, et seq.

34. Defendants were aware of Mrs. Reilly's sincere religious beliefs and practices.

35. Mrs. Reilly was always relevant herein an individual and employee for purposes of the WFEA, prohibiting discrimination in employment.

36. Defendants were always relevant herein employers for purposes of the WFEA.

37. As a Christian, Mrs. Reilly was always relevant herein a member of a protected class for purposes of the WEFA.

38. Defendants were aware of Mrs. Reilly's sincere religious beliefs and practices.

39. Wis. Stat. § 111.31 (3) states, "It is declared to be the public policy of the state to encourage and foster to the fullest extent practicable the employment of all properly qualified individuals regardless of age, race, creed."

40. Wis. Stat. § 111.31 (5) further states, " the prohibition of discrimination on the basis of creed under s. 111.337 is a matter of statewide concern."

41. Mrs. Reilly felt bullied into getting the vaccine, causing anxiety and stress due to Defendants forcing her to choose between her deeply held religious beliefs, her financial livelihood.

42. Mrs. Reilly was placed on unpaid suspension for requesting a religious accommodation in compliance with both Title VII of the Civil Rights Act of 1964, and the WFEA (Wis. Stat §§ 111.31 to 111.395).

43. Defendants refused to explore available reasonable alternatives to allow Mrs. Reilly to do her job. Defendants refused to engage in any timely, interactive, meaningful, or good faith process with Mrs. Reilly to accommodate her sincerely held religious beliefs.

44. Defendants' refusal to accommodate, or even explore any kind of accommodation of Mrs. Reilly's religious beliefs, was a substantial motivating factor in Defendants' decision to deprive Plaintiff of employment, placing her on unpaid suspension.

45. Defendants intentionally violated Mrs. Reilly's rights under the Title VII and the WFEA with malice and reckless indifference.

46. Mrs. Reilly's religious beliefs and practices were therefore a motivating factor in placing her on unpaid suspension.

47. At the time of Mrs. Reilly's unpaid suspension, the COVID-19 vaccinations were demonstrating ineffectiveness against the Delta and Omicron variants.

48. At the time of Mrs. Reilly's unpaid suspension, it was evident that Defendants, Defendants' affiliates, the State of Wisconsin, and the nation were experiencing severe shortages in healthcare organizations, particularly with Registered Nurses.

49. There were no valid reasons whatsoever for placing Mrs. Reilly on unpaid suspension, other than Mrs. Reilly's requests for religious exemption.

50. Mrs. Reilly suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

51. Defendants intentionally violated Mrs. Reilly's rights under Title VII and the WFEA with malice and reckless indifference.

52. Mrs. Reilly is entitled to lost wages, compensatory damages, punitive damages, attorney fees, costs of suit, a declaration that Defendants violated her rights under the WFEA and Title VII, and an injunction preventing Defendants from further enforcing their discriminatory practices.

53. Mrs. Reilly is entitled to further relief as set forth in her Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Mrs. Reilly respectfully prays this Court grants relief as follows:

A. Award Plaintiff backpay, including past loss wages and benefits, plus interest;

B. Award Plaintiff other and further compensatory damages in an amount according to proof;

C. Award Plaintiff noneconomic damages, including but not limited to mental health suffrage;

D. Award Plaintiff reasonable attorneys' fees and costs of suit.

E. Award Plaintiff punitive damages;

F. Enjoin Defendants from enforcing their discriminatory policies;

G. Declare that Defendants have violated Title VII of the Civil Rights Act and the WFEA; and

H. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Dated: October 3, 2022                    /s/ Carol Lee Ferrero
                                          Carol Lee Ferrero
                                          Pacific Justice Institute
                                          9714 North Valley Hill Drive
                                          Mequon, Wisconsin 53092
                                          Phone: 262-227-7203
                                          cferrero@pji.org

                                          *Attorney for Plaintiffs*